UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSE BRANDS, LLC, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>JOAO GENTIL, et al.,<br><br>                    Defendants. | Case No.  15-cv-01744-JSC<br><br>**ORDER ON MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 26, 27, 28 |

Plaintiffs Muse Brands, LLC ("Muse"), Raimundo Favacho ("Favacho"), Patricia Ebner ("Ebner"), and Lo Braz ("Braz," and collectively, "Plaintiffs") bring this case against Defendants Joao Gentil ("Joao"), his wife Patricia Gentil ("Patricia"), and his attorney David Nakamura ("Nakamura," and together, "Defendants") arising out of their business venture to create Muse, a graphic design and branding firm.  Plaintiffs' allege that Defendant Joao induced Favacho, Ebner, and Braz (together, the "Individual Plaintiffs") to leave their steady jobs at an established advertising firm to start Muse by promising to provide substantial seed money, to work for the agency himself, and have his other companies—largely located in Brazil—serve as the agency's main clients, but Joao failed to honor those promises.  The First Amended Complaint ("FAC") includes causes of action for fraud, negligent misrepresentation, breach of oral contract, breach of fiduciary duty, intentional interference with prospective economic advantage, promissory estoppel, restitution, and intentional and negligent infliction of emotional distress.  (Dkt. No. 19-1.)  Now pending before the Court are each of the Defendants' motions to dismiss.  (Dkt. Nos. 26, 27, 28.) Having reviewed the parties' submissions, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Patricia's and Nakamura's motions to dismiss in their entirety and GRANTS IN PART Joao's motion to dismiss.

# BACKGROUND

## A.    Complaint Allegations

This case arises out of the formation and dissolution of Muse, a graphics design and branding firm incorporated in Delaware with its principal place of business in San Francisco, California.  (Dkt. No. 19-1 ¶ 1.)  Favacho, Ebner, and Braz (the "Individual Plaintiffs"), as well as Defendant Joao, all became shareholders of Muse when it formed in March 2014.  (*Id.* ¶¶ 2-5.) Joao and his wife Patricia live in Hawaii, as does their attorney, Nakamura.  (*Id.* ¶¶ 5-7.)

Since 2009, the Individual Plaintiffs worked in high-level positions at a San Francisco advertising agency.  (*Id.* ¶ 11.)  Favacho and Ebner were Design and Branding Directors, and Braz served as International Business Director.  (*Id.*)  On January 10, 2014, Joao approached the Individual Plaintiffs to discuss the possibility of opening a new company specializing in "Advertising, Branding, and Interactive" meant primarily to serve Joao's other business ventures, including Beach Park, a waterpark in Fortaleza, Brazil, and Love & Peace Rocks, a music festival and lecture series.  (*Id.* ¶ 12.)

Though reluctant to give up their existing, stable jobs to engage in a risky new venture, on January 29, 2014 Braz and Favacho flew to Maui to discuss the details of the new company with Joao.  (*Id.* ¶ 13.)  They presented Joao with a written proposal for formation of the new company, Muse, and Joao agreed to it.  (*Id.*)  At that meeting, Joao represented that Beach Park and Love & Peace Rocks would be the new agency's major clients.  (*Id.*)  Favacho and Ebner wanted their current client, Cheesecake Factory, to be Muse's other main client, but Joao repeatedly urged that Cheesecake Factory was a bad client.  (*Id.*)  Instead, Joao urged the Individual Plaintiffs to forget Cheesecake Factory and rely on Joao's ventures as Muse's main clients, emphasizing that as Beach Park's 50% shareholder, Joao always has had total control over choosing the company's advertising agency.  (*Id.*)  When Plaintiffs remained unconvinced, Joao provided Beach Park's annual revenue and its advertising budget, which was over $1,500,000 per year, to entice the Individual Plaintiffs to form Muse.  (*Id.* ¶ 13.)

To further assuage the Individual Plaintiffs' concerns about whether there was adequate capital to operate Muse, Joao made a number of representations to Favacho and Braz at a January

2

30, 2014 meeting at Joao's office in Maui. (*Id.*) Joao represented that as long as he had control over Beach Park's marketing budget, Muse would be guaranteed to retain the account; that Muse would work on all of Love & Peace Rocks' marketing needs; and that Muse would handle any other marketing needs of Joao and his ventures. (*Id.*) Joao further represented that he would invest a sum—determined at a February 13, 2014 meeting to be $625,000, as an equity contribution towards Muse's operating expenses, and that he would work full time for Muse utilizing his skills and contacts in exchange for a salary, later determined to be $100,000 per year. (*Id.*) The parties also agreed that Braz would also receive a $100,000 annual salary, while Favacho and Ebner would each receive a $200,000 annual salary. (*Id.*)

In reliance on those representations, the Individual Plaintiffs accepted Joao's oral offer to form Muse; the parties never executed any written agreement. (*Id.* ¶¶ 14, 19.) The Individual Plaintiffs resigned from their advertising jobs to start Muse based on the terms of that oral agreement. (*Id.* ¶ 14.) A corporate operating agreement for Muse was formed, but never signed. (*Id.* ¶ 19.) Muse hired counsel and a CFO, and ratified its articles of incorporation and performed other corporate formalities to incorporate under Delaware law. (*Id.* ¶ 15.) Plaintiffs began working full time for Muse to develop its clientele, leasing an office and hiring employees in both Brazil and San Francisco. (*Id.* ¶ 17.) Plaintiffs incurred substantial expenses opening and operating Muse. (*Id.* ¶ 16.)

However, while Joao made the $625,000 seed money contribution as the parties had agreed, he never performed services for Muse. (*Id.* ¶ 18.) In May of 2014, Favacho raised the issue of Joao's non-participation, and Joao agreed to relinquish his salary until he was able to work full time for Muse. (*Id.*)

Other issues arose in the months that followed. In April of 2014 Muse signed a seven-month contract with Beach Park. (*See id.* ¶ 20.) Beach Park never complained to Muse about the work it did, and Beach Park approved all work that Muse produced; nevertheless, on November 7, 2014, Beach Park informed Muse that Beach Park would not renew the contract. (*Id.*) Then, in a letter dated November 17, 2014 sent to Favacho, Nakamura informed Muse that Joao was resigning from Muse for health reasons. (*Id.* ¶ 21.) After receiving the letter, Favacho repeatedly

3

attempted to contact Joao, but Joao never responded.  (*Id.* ¶ 22.)  Favacho unsuccessfully tried to locate Joao through third parties.  (*Id.*)  At that point, Nakamura sent Plaintiffs a "settlement agreement" that would require Plaintiffs to repay Joao's $625,000.  (*Id.*)  Plaintiffs had understood the advance to be "seed money"; the settlement agreement characterized it as a "loan," though Joao never characterized it as such during the course of the parties' negotiations.  (*Id.*)  Nakamura pressured Plaintiffs to sign the settlement agreement.  (*Id.*)

Around the same time, Beach Park failed to pay the final invoice of just over $100,000 required pursuant to its seven-month contract with Muse.  (*Id.* ¶ 23.)  Muse inquired with Beach Park about payment, and in response Beach Park informed Muse that "[o]n the advise [sic] of our attorney David Nakamura, Beach Park will pay the final invoice when you all sign and return the settlement agreement."  (*Id.* ¶¶ 23, 54 & Ex. A.)

## B.    Procedural History

Plaintiffs filed the instant suit on April 15, 2015 against Joao, his wife Patricia, and Nakamura.  (Dkt. No. 1.)  After Defendants moved to dismiss the complaint, Plaintiffs filed the FAC.  (*See* Dkt. Nos. 11, 12, 13, 19.)  The FAC includes nine causes of action brought by various combinations of Plaintiffs and against various Defendants.

The first two causes of action are for fraudulent and negligent misrepresentation.  The fraudulent misrepresentation is alleged by the Individual Plaintiffs against Joao, while the negligent misrepresentation is alleged by all Plaintiffs against Joao.  Plaintiffs' third cause of action alleges that Joao is liable for breach of oral contract.  In the fourth cause of action, the Individual Plaintiffs accuse Joao of breach of fiduciary duty.  In the fifth, sixth, and seventh causes of action, all Plaintiffs allege that all Defendants are liable for intentional interference with prospective business advantage, promissory estoppel, and restitution (in the alternative to the breach of contract claim).  In the last two causes of action, the Individual Plaintiffs allege that all Defendants are liable for intentional and negligent infliction of emotional distress.  As a result of these causes of action, Plaintiffs seek compensatory and punitive damages.

Defendants each filed a motion to dismiss.  (Dkt. Nos. 26, 27, 28.)  Defendants have not challenged the second, third, and seventh causes of action, which bring claims of breach of oral

United States District Court
Northern District of California

contract, breach of fiduciary duty, and restitution against Joao.[1]  Defendants contend that all other causes of action fail to state a claim upon which relief may be granted.  The Court held a hearing on the motions on July 30, 2015.

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept [s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain

---

[1] At the conclusion of Joao's motion, he includes the seventh cause of action for restitution as requiring dismissal, but Joao nowhere addresses the restitution claim in his motion.  The Court therefore concludes that Joao is not challenging the seventh cause of action.

United States District Court
Northern District of California

1   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

2   defend itself effectively."). The court must be able to "draw the reasonable inference that the

3   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a

4   complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

5   reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

**DISCUSSION**

**A.     Claims against Patricia**

8          Plaintiffs bring three causes of action—international interference with prospective

9   economic advantage, and intentional and negligent emotional distress—against Patricia. Aside

10   from her introduction as Joao's wife, the FAC contains only a single paragraph that references

11   Patricia: it alleges that when Nakamura instructed Beach Park to withhold payment from Muse,

12   Nakamura was acting on Patricia's behalf and therefore she is jointly and severally liable for

13   Nakamura's interference. (Dkt. No. 19-1 ¶ 54.) This is not enough to state a plausible claim for

14   any of the causes of action alleged against her. Plaintiffs argue in their opposition that Patricia

15   may be liable for intentional interference because Plaintiffs "engaged in discussions" with her on

16   Joao's behalf when Joao stopped interacting with them and that she must have directed Nakamura

17   to instruct Beach Park to withhold its required payment. (*See* Dkt. No. 31 at 2.)[2]   But the FAC

18   includes no such facts. Because there are insufficient facts alleged regarding Patricia's role in the

19   events, all claims against her are dismissed.

20          Plaintiffs suggest that "[i]f discovery reveals that [Patricia] was uninvolved, plaintiffs will

21   dismiss her at that juncture." (*Id.*) But this approach—allowing Plaintiffs to proceed to discovery

22   to determine if a party was involved enough to be held to answer—flips the relevant pleading

23   standard on its head.   Instead, *Iqbal* and *Twombly* require a plaintiff to plead enough facts from

24   which a plausible inference of fraud can be drawn to survive dismissal and proceed to discovery.

25   The Court therefore GRANTS Patricia's motion to dismiss in its entirety, and all claims against

26   her are dismissed with leave to amend to allege facts regarding her involvement in any of the

---

[2] Page numbers throughout refer to those that the Court's electronic filing system automatically assigns.

1    allegedly tortious conduct.

2    **B.     Claims against Joao**

3        1.     <u>First Cause of Action: Fraud</u>

4        Plaintiffs' first cause of action alleges fraud against Joao.  The gravamen of their claim is

5    that when Joao promised to ensure that Muse retained the Beach Park account and to work full

6    time for Muse, he never intended to honor those promises.  (Dkt. No. 19-1 ¶¶ 24, 32.)  Plaintiffs

7    allege that they suffered economic loss as a result of the conduct alleged, including the investment

8    of time and money into Muse's expenses, and the losses of their salaries and benefits from their

9    prior jobs, as well as emotional distress, including grief, shame, humiliation, embarrassment,

10   anger, chagrin, disappointment, depression, and worry.  (*Id.* ¶ 27.)  Defendants seek to dismiss

11   these counts on the ground that Plaintiff fails to plead fraud with particularity as required by

12   Federal Rule of Civil Procedure 9(b) and otherwise fails to plead adequate facts to support a claim

13   for fraud.

14       Rule 9(b) states:  "[i]n alleging fraud or mistake, a party must state with particularity the

15   circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

16   person's mind may be alleged generally."  Fed. R. Civ. P. 9.  Thus, the Ninth Circuit has held that,

17   "while a federal court will examine state law to determine whether the elements of fraud have

18   been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances

19   of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy*

20   *Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003).  In other words, "[a]verments of fraud must be

21   accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Kearns v.*

22   *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

23       When the complaint highlights a particular statement as false, it must also "set forth what

24   is false or misleading about a statement, and why it is false."  *In re GlenFed, Inc. Sec. Litig.*, 42

25   F.3d 1541, 1548 (9th Cir. 1994).  Notably, to qualify as a misrepresentation, the complaint must

26   allege facts sufficient to plausibly establish that the statement was false when made.  *Id.*; *see*

27   *also Richardson v. Reliance Nat'l Indem. Co.*, No. C-99-2952-CRB, 2000 WL 284211, at *4

28   (N.D. Cal. Mar. 9, 2000) ("Rule 9(b) requires plaintiffs to plead facts establishing the falsity of a

United States District Court
Northern District of California

7

statement *at the time it is made.*" (emphasis in original)).  Mere conclusory allegations of the statements' falseness are insufficient.  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548.  Rather, to plead falseness, the plaintiff must provide "an explanation as to why the disputed statement was untrue or misleading when made[,]" which may be done "by pointing to inconsistent contemporaneous statements or information" or a "later statement by the defendant along the lines of 'I knew it all along[,]'" *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1549 & n.9, or circumstantial evidence that explains why the statement was misleading when made.  *Richardson*, 2000 WL 284211, at *5 (citation omitted).  Such circumstantial evidence may include the "shortness of time between later revealed truth and prior statements[.]"  *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1112 (D. Nev. 1998).

Here, Plaintiffs allege that Joao had Plaintiffs start Muse based on his promises to work for Muse and ensure the company retained Beach Park's account, but Joao never intended to honor those promises.  In essence, Plaintiffs' claim sounds in "promissory fraud," which "is a subspecies of fraud which permits a plaintiff to state a cause of action in tort when a defendant fraudulently induces him to enter into a contract."  *Richardson*, 2000 WL 284211, at *4 (citation omitted).  In short, "[w]hile mere failure to perform on a contract does not constitute fraud, a promise made *without the intention to perform* can be actionable fraud."  *Id.* (emphasis in original) (citations omitted).  Plaintiff has largely complied with 9(b)'s strictures by identifying the time, place and content of Joao's misrepresentations.  However, the FAC falls short because Plaintiffs have failed to allege facts sufficient to support a plausible inference that the statements were actually false when made.  All that is alleged in the FAC is that the statements turned out to be false.  But courts have oft rejected the argument that a plaintiff can prove the requisite fraudulent intent by simply pointing to the defendant's subsequent failure to perform under the agreement.  *See, e.g.*, *Canard v. Bricker*, No. 14-cv-04986-JSC, 2015 WL 846997, at *6 (N.D. Cal. Feb. 25, 2015); *Bio-Horticultura Las Parritas, S.A. de C.V. v. Aviara Parkway Farms, Inc.*, No. 14-cv-0892-WQH-DHB, 2014 WL 4955711, at *4 (S.D. Cal. Sept. 30, 2014); *AMC Tech., LLC v. Cisco Sys., Inc.*, No. 11-cv-03403 PSG, 2012 WL 174949, at *3 (N.D. Cal. Jan. 20, 2012); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001); *Richardson*, 2000 WL 284211, at *4.

United States District Court
Northern District of California

For example, in *Smith v. Allstate Insurance Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001), the court called "specious" the argument that a plaintiff can premise a fraud claim on the grounds that the defendant never intended to honor the contract. *Id.* The *Smith* court explained that such an argument "assumes that the alleged breach of contract can be used as evidence that [the defendant] never intended to honor the contract, thereby committing fraud[,]" but this assumption "contradicts the heightened pleading requirements of Rule 9(b) and would allow every breach of contract to support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise." *Id.* at 1154-53 (internal quotation marks, citations, and alterations omitted); *see also Richardson*, 2000 WL 284211, at *5 ("Adopting plaintiff's argument would effectively eviscerate the effect of Rule 9(b) in every case of promissory fraud. Under plaintiff's theory, every breach of contract would support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise."); *see also Hsu v. OZ Optics*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (noting that the plaintiff is required to plead "facts from which the Court can infer that the allegedly fraudulent statements were false when made"). So it is here: Plaintiffs cannot turn their breach of oral contract claim into an action for fraud by alleging that Joao never intended to honor the promises that served as the foundation for the agreement based on the mere fact of the eventual alleged breach. This is especially true where, as here, the fraud claim turns on statements of future intent rather than statements of fact. *See Canard*, 2015 WL 846997, at *7. Thus, the FAC fails to state a claim for fraud.

Plaintiffs contend that "the nuances regarding the reasons plaintiffs believe Joao never intended to perform his promises can be elicited through discovery." (Dkt. No. 30 at 3.) But as explained in the discussion of Patricia's motion, this approach—allowing Plaintiffs to cure pleading defects at the back end through facts gleaned through discovery rather than pleading facts in the complaint—flips the relevant pleading standard on its head. *Iqbal* and *Twombly* require a plaintiff to plead enough facts from which a plausible inference of fraud can be drawn to survive dismissal. However, Plaintiffs will be given leave to amend the claim to comply with the case law set forth above; that is, Plaintiffs shall have the opportunity to allege facts that support a plausible

inference that the statements were false when made.

> ### 2.    Second Cause of Action: Negligent Misrepresentation

Plaintiffs' second cause of action alleges that Joao's promises to ensure that Muse retained the Beach Park marketing account and to work full time for Muse constituted negligent misrepresentation.  (Dkt. No. 19-1 ¶¶ 31-33.)  Under California law, fraudulent and negligent misrepresentation differ only in the level of scienter involved; fraudulent misrepresentation requires knowledge or reckless indifference to the falsity of the statement rather than mere negligence.  *See JMP Sec. LLP v. Altair Nanotechs. Inc.*, 880 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012); *Ventura Cnty. Nat'l Bank v. Macker*, 49 Cal. App. 4th 1528, 1530 (1996).  Plaintiffs' negligent misrepresentation claim relies on allegations identical to those supporting his intentional, fraudulent misrepresentation claim.  (Dkt. No. 19-1 ¶ 31.)  Because these claims sound in fraud, Plaintiffs must plead the circumstances of the purported fraud with particularity, though they may allege intent generally.  *See* Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1103-04; *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, No. 11-CV-01762-LHK, 2012 WL 3071431, at *13 (N.D. Cal. July 26, 2012) ("Courts in the Ninth Circuit have held that claims for both fraud and negligent misrepresentation are subject to Rule 9(b)." (collecting cases)); *see, e.g.*, *Harvey v. Bank of Am., N.A.*, No. 12-3238 SC, 2013 WL 632088, at *5 (N.D. Cal. Feb. 20, 2013) (noting that where the plaintiff's negligent misrepresentation claim was based on the same factual predicate as intentional misrepresentation claim and therefore sounds in fraud, Rule 9(b) applies to both claims). Applying Rule 9(b), Plaintiffs' negligent misrepresentation cause of action fails to state a claim because Plaintiffs have failed to plead facts sufficient to plausibly establish that Joao lacked reasonable grounds to believe he did not intend to follow through on his promises at the time he made them.  Plaintiffs have therefore failed to state a claim for negligent misrepresentation.  *See, e.g.*, *Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1177-78 (E.D. Cal. 2011) (dismissing negligent misrepresentation claim where the plaintiff "does not explain what circumstances made it unreasonable" for the defendant to believe the truth of his statement at the time it was made).

> ### 3.    Sixth Cause of Action: Promissory Estoppel

In the sixth cause of action, Plaintiffs bring a claim of promissory estoppel against Joao.

The elements of a claim for promissory estoppel are: "(1) a promise, (2) the promisor should reasonably expect the promise to induce action or forbearance on the part of the promise or a third person, (3) the promise induces action or forbearance by the promise or a third person—*i.e.*, detrimental reliance—and (4) injustice can be avoided only by enforcement of the promise." *Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).

Defendants appear to concede that the FAC alleges detrimental reliance and injustice, but launch attacks against the promissory estoppel claim on two other fronts: first, that the FAC does not sufficiently allege a promise; and second, that the promise was not made to certain Plaintiffs. Neither argument has merit. As to the first point, "a promise is an indispensable element of . . . promissory estoppel." *Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1044 (2010). For a promise to be enforceable, it need only be "definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006) (internal quotation marks and citations omitted). "[U]nlike a party seeking to establish a promise in a pure breach of contract context, a party seeking to establish promissory estoppel cannot rely on extrinsic evidence to explain an ambiguous statement." *Garcia*, 183 Cal. App. 4th at 1044. In the promissory estoppel cause of action, Plaintiffs allege that Joao promised Favacho and Braz: (1) that as long as he had control over Beach Park's marketing budget, Muse would retain the account; (2) that Muse would get all of Love & Peace Rocks's marketing business; (3) that Joao would invest $625,000 as an equity contribution towards Muse's operating expenses; and (4) that he would work full time for Muse in exchange for an annual salary of $100,000. (Dkt. No. 19-1 ¶ 13.) While the first promise might require some extrinsic evidence to interpret what control over Beach Park's marketing budget meant, the other three promises are all definite on their own.

Defendant's next argument—that "[i]n order for all of the plaintiffs to assert [promissory estoppel], there must be allegations of promises made to each [of them]" (Dkt. No. 26 at 15)— fares no better. California promissory estoppel claims may be premised on promises that induce action not only of the promisee, but also of third parties to whom the promise was not made. *See Kajima/Ray Wilson*, 23 Cal. 4th at 310. All Plaintiffs therefore state a claim for promissory

1  estoppel against Joao.

2  **C.     Claims against Joao & Nakamura[3]**

3         1.     Fifth Cause of Action: Intentional Interference with Prospective Business
              Advantage
4

5         The fifth cause of action, brought by all Plaintiffs, alleges that all Defendants are liable for

6  intentional interference with prospective economic advantage by interfering with Muse's

7  relationship with Beach Park.  (Dkt. No. 19-1 ¶¶ 49-56.)  The crux of the claim is that Joao

8  directed Nakamura to instruct Beach Park to withhold payment to Muse in an attempt to force

9  Plaintiffs into a settlement agreement to return Joao's $625,000 contribution.  (*See id.*)

10        To state a claim for intentional interference with prospective business advantage, a plaintiff

11 must plead facts sufficient to plausibly establish the following elements: (1) an economic

12 relationship between the plaintiff and some third party, with the probability of future economic

13 benefit to the plaintiff; (2) the defendant's knowledge of that relationship; (3) intentional acts on

14 the part of the defendant designed to disrupt the relationship; (4) actual disruption of that

15 relationship; (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

16 *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1144 (N.D. Cal. 2010) (citing *Korea*

17 *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).  In addition, the intentional

18 acts alleged as part of the third element must have been "wrongful by some legal measure other

19 than the fact of interference itself."  *Korea Supply Co.*, 29 Cal. 4th at 1153 (citation omitted); *see*

20 *also CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007)

21 (same) (citation omitted).  This requirement is important, as the tort of intentional interference

22 with prospective business advantage is "not intended to punish individuals or commercial entities

23 for their choice of commercial relationships or their pursuit of commercial objectives, unless their

24 interference amounts to independently actionable conduct."  *Korea Supply Co.*, 29 Cal. 4th at

25 1158-59.

26        "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some

27

28 ───────────────
   [3] The Court refers to the remaining claims against "All Defendants" as against Joao and
   Nakamura, since all claims against Patricia are being dismissed.

United States District Court
Northern District of California

United States District Court
Northern District of California

constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* For example, courts have held that a plaintiff can state a claim for intentional interference by pleading violation of California's Unfair Competition Law, *see, e.g.*, *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215, 1224 (2006), *CRST Van Expedited, Inc.*, 479 F.3d at 1110, the Foreign Corrupt Practices Act, *see, e.g.*, *Korea Supply*, 29 Cal. 4th at 1159, or constituted some other independent tort, *see Korea Supply Co.*, 29 Cal. 4th at 1159; *see, e.g.*, *Monex Dep. Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1163 (C.D. Cal. 2010), such as making a knowingly false statement about the plaintiff's product, *see, e.g.*, *Silicon Labs Integration, Inc. v. Melman*, No. C-08-04030-RMW, 2010 WL 890140, at * 4 (N.D. Cal. Mar. 8, 2010), or making threats of sham litigation, *see, e.g.*, *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Servs., L.L.C.*, No. C-06-4693 JCS, 2007 WL 1394427, at *12 (N.D. Cal. May 10, 2007).  The independently wrongful conduct must proximately cause the interference.  *See Bus. Integration Tech. v. MuleSoft Inc.*, No. C 11-04782 EDL, 2011 WL 5914012, at *9 (N.D. Cal. Nov. 28, 2011).

Here, Plaintiffs have sufficiently alleged several of the required elements, including existence of a business relationship between Muse and Beach Park, Defendants' knowledge of that relationship, and an actual disruption in the relationship based on Beach Park's decision to withhold payment to Muse.  (Dkt. No. 19-1 ¶ 52.)  But Plaintiffs' FAC fails to plead facts sufficient to support the third element, independently wrongful conduct.  While some of the other causes of action alleged—such as fraud or negligent misrepresentation—could potentially serve as the basis for an intentional interference claim, the conduct underlying the other claims is not related to the particular conduct alleged here, and therefore proximate cause between the underlying wrongful conduct and Plaintiffs' alleged damage is absent.  When the other causes of action fall away, nowhere does the FAC allege that Defendants' advice to Beach Park to hold off on paying Plaintiffs constitutes wrongful, unlawful conduct apart from the alleged interference with Muse's potential business prospects with Beach Park.  This is not enough to state a claim.

Plaintiffs appear to acknowledge as much, relying in their opposition on facts not pleaded in the FAC.  Specifically, Plaintiffs argue that Nakamura's instruction to Beach Park not to pay

Muse violated a Brazilian statute prohibiting the unauthorized practice of law. (Dkt. No. 30 at 3-4.) Thus, while Plaintiffs argue that this element is met because Nakamura represented Beach Park without a law license, the FAC alleges that he did *not* represent that entity. (Dkt. No. 19-1 ¶ 51.) Ultimately, the Court need not solve this dilemma, as the FAC does not include any allegations pertaining to unauthorized practice of law. Thus, the FAC fails to state a claim for intentional interference with prospective economic advantage because the FAC does not allege facts that the conduct of Joao or Nakamura, in advising Beach Park not to pay Muse, constituted independently wrongful conduct.[4]

Finally, Joao contends that Plaintiffs have not alleged actionable damages. It is true that attorneys' fees are not recoverable as compensatory damages, *see Hynix Semiconductor, Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1099-1100 (N.D. Cal. 2007), so this cannot serve as the damages required to state a claim for intentional interference. And the FAC makes clear that, notwithstanding the alleged interference, Beach Park did eventually pay Muse the amount due. (*Id.*) Instead, Plaintiffs allege that they were damaged because the exchange rate between the Brazilian real—the currency Beach Park was contractually obligated to pay to Muse—and the U.S. dollar dropped while Beach Park delayed payment, such that Muse ended up receiving fewer dollars than it otherwise would have. (Dkt. No. 19-1 ¶ 52.) Under California law, a plaintiff may

---

[4] In addition, "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 832 (9th Cir. 2001) (citations omitted). Here, the FAC alleges that Beach Park is Joao's business venture. (Dkt. No. 19-1 ¶ 12.) But "a California appellate court has since directly rejected *Marin Tug*'s characterization of California law on this point." *G&C Auto Body Inc. v. Geico Gen. Ins. Co.*, 552 F. Supp. 2d 1015, 1019 (N.D. Cal. 2008) (citing *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344, 354 (2005)). That is, "*Woods* concluded that *Marin Tug* could not be read to protect a defendant who has 'no more than an economic interest or connection to the plaintiff's [relationship] with some other entity." *G&C Auto Body*, 552 F. Supp. 2d at 1020 (citing *Woods*, 129 Cal. App. 4th at 355). Thus, courts in this District have found that California law does not reject an intentional interference with prospective economic relationship claims merely because some economic relationship is alleged. *G&C Auto Body*, 552 F. Supp. 2d at 1021. In any event, there is not enough alleged in the FAC for the Court to reject the claim on this ground.

United States District Court
Northern District of California

only recover damages that are proximately caused by defendant's conduct.  *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522 (1996).  Joao cites two cases for the proposition that courts decline to find currency fluctuations recoverable compensatory damages for a defendant's tortious conduct because the fluctuations are not a reasonably foreseeable consequence of the defendant's conduct.  (*See* Dkt. No. 26 at 12 (citing *Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 348 (2004), and *Ventas v. HCP, Inc.*, 647 F.3d 291, 327 (6th Cir. 2011)).)  Neither case is from the Ninth Circuit or California courts, and thus neither controls.  Moreover, *Ventas* was a summary judgment case, so a claim for damages based on exchange-rate fluctuations survived this stage of litigation.  But the foreseeability analysis is what matters; the *Ventas* court explained that such damages were not compensable because there was no evidence that the plaintiff's agreement with the third party—*i.e.*, the relationship that was interfered with—had a particular date or exchange rate in mind.  Drawing all inferences in Plaintiffs' favor, it is possible to read into the FAC that Plaintiffs agreed to be paid in Brazilian reals because of the favorable exchange rate, such that causing a delay in payment of such foreign currency might trigger an unfavorable change in those rates.  But the Court need decide whether this is the case, as the FAC otherwise fails to state a claim for intentional interference.  In an amended complaint, however, Plaintiffs would be wise to address this issue.

Finally, Joao contends that the claim fails because the alleged interfering conduct is protected by the litigation privilege.  The FAC alleges that the instruction to Beach Park to withhold payment was made in the context of settlement negotiations: that is, that Beach Park was instructed not to pay until the Plaintiffs had signed a settlement agreement with Joao.  (Dkt. No. 19-1 ¶¶ 22-23.)  Joao contends that the claim, based entirely on Nakamura's advice to Beach Park, fails to state a claim because counsel's communications made in connection with settlement efforts cannot serve as the basis for an intentional interference claim, as they are protected by the litigation privilege set forth in California Civil Code Section 47.  (Dkt. No. 26 at 12-13.)

"The litigation privilege . . . provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged."  *Action Apt. Assoc., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (internal quotation marks omitted).  "This privilege is absolute in nature,

United States District Court
Northern District of California

1    applying to *all* publications, irrespective of their maliciousness." *Id.* (internal quotation marks and

2    citation omitted).  "[T]he privilege applies to any communication (1) made in judicial or quasi-

3    judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the

4    objects of the litigation; and (4) that [has] some connection or logical relation to the action."

5    *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).  "The privilege "is not limited to statements

6    made during a trial or other proceedings, but may extend to steps taken prior thereto, or

7    afterwards[,]" *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006), as well as statements made

8    outside the courtroom, *Silberg*, 50 Cal. 3d at 211-12.  These include "communications between

9    litigants and their attorneys which are directed toward settlement of a pending or *anticipated*

10   lawsuit," *GeneThera, Inc. v. Troy & Gould Prof. Corp.*, 171 Cal. App. 4th 901, 910 (2009)

11   (citation omitted), so long as the party contemplates litigation in good faith.  *See Visto Corp.*, 360

12   F. Supp. 2d at 1069.  The privilege "is not restricted to the parties in the lawsuit but need merely

13   be connected or related to the proceedings."  *Adams v. Super. Ct.*, 2 Cal. App. 4th 521, 529

14   (1992); *see, e.g.*, *Reid-Ashman Mfg., Inc.*, 2007 WL 1394427, at *12 ("[W]here a third party

15   purchases a product that is the subject of an infringement action, a communication to that party

16   informing it of the action has a logical relation to the action because the third party clearly has an

17   interest in the litigation.").

18          Applying these standards here, the litigation privilege is an absolute bar to Plaintiffs'

19   intentional interference claim as written, which specifically alleges that, based on Nakamura's

20   instruction, Beach Park told Plaintiffs that it would not pay the amount due until the Plaintiffs

21   signed the settlement agreement with Joao.  (Dkt. No. 19-1 ¶¶ 22-23.)  As alleged, this plainly

22   connects Nakamura's communication to a pre-litigation attempt to settle.

23          Plaintiffs' contention that Nakamura's communication to Beach Park falls outside the

24   litigation privilege's protective reach because it was not made "in the interests of justice" (Dkt.

25   No. 30 at 4-5), is wrong: the California Supreme Court rejected the "interest of justice"

26   requirement decades ago.  *See Silberg*, 50 Cal. 3d at 218 ("[T]he well-intentioned addition of the

27   'interest of justice' test must be rejected [because a] rule that an otherwise privileged

28   communication is not privileged . . .  unless made for the purpose of promoting the 'interest of

16

1    justice' is wholly inconsistent with the numerous cases in which fraudulent communications or

2    perjured testimony have nevertheless been held privileged.").  Still, the Court will grant Plaintiffs

3    leave to amend this claim to allege facts not only to state a plausible claim of intentional

4    interference, but to plausibly allege facts that do not trigger the litigation privilege.

5              3.       Eighth Cause of Action: Intentional Infliction of Emotional Distress

6          In the eighth cause of action, the Individual Plaintiffs allege that Defendants' conduct

7    constitutes intentional infliction of emotional distress.  (Dkt. No. 19-1 ¶¶ 62-66.)  Defendants

8    contend that the conduct alleged is not outrageous enough to give rise to the claim, and because

9    the alleged conduct is privileged.

10         To state a claim for intentional infliction of emotional distress, a plaintiff must allege "(1)

11   extreme and outrageous conduct by the defendant with the intention of causing, or reckless

12   disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

13   extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

14   defendant's outrageous conduct." *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991).  Conduct

15   is "outrageous" or "extreme" where it "exceed[s] all bounds of that usually tolerated in a civilized

16   society." *Schneider v. TRW, Inc.*, 67 F. Supp. 3d 1091, 1099 (N.D. Cal. 2014) (citation omitted).

17   "Behavior may be considered outrageous if a defendant (1) abuses a relation or position which

18   gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries

19   through mental distress; (3) acts intentionally or unreasonably with the recognition that acts are

20   likely to result in illness through mental distress." *Hailey v. Cal. Physicians' Serv.*, 158 Cal. App.

21   4th 452, 474 (2007) (citations omitted).  In addition, the "defendant must have engaged in conduct

22   intended to inflict injury or engaged in with the realization that injury will result." *Potter v.*

23   *Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 1001 (1993) (internal quotation marks and citations

24   omitted); *see also Christensen*, 54 Cal. 3d at 904-05 (noting that the defendant's conduct must be

25   "especially calculated to cause . . . mental distress of a very serious kind").  When a plaintiff

26   alleges that a defendant acted recklessly for purposes of a claim of intentional infliction of

27   emotional distress, the plaintiff must allege facts showing that she was present when the

28   outrageous conduct occurred. *Potter*, 6 Cal. 4th at 1002.  For emotional distress to be severe, it

United States District Court
Northern District of California

must be "of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970).

Here, Plaintiffs allege that Defendants' conduct was "extreme and outrageous . . . [and] beyond the boundaries which any civilized society could tolerate." (Dkt. No. 19-1 ¶ 63.)  But in their intentional infliction of emotional distress claim, Plaintiffs neglect to identify the specific conduct that they allege was extreme and outrageous; instead, they simply incorporate by reference the allegations of the FAC in their entirety.  (*Id.* ¶ 62.)  "This type of improper 'shotgun pleading' does not comport with Rule 8's requirement that the pleader provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" and . . . "fails to provide Defendants with 'fair notice' of the basis of [the] claim." *Rashdan v. Geissberger*, No. C 10-00634-SBA, 2011 WL 197957, at *10 (N.D. Cal. Jan. 14, 2011) (citations omitted).  Moreover, when the Court considers the bulk of the allegations in the FAC, nothing appears to qualify as the type of "outrageous" conduct that this tort requires. *See Helgeson v. Am. Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1096-97 (S.D. Cal. 1999) ("Although defendants carried out their business decisions in a manner offensive to plaintiff, it was not extreme and outrageous as a matter of law.").  Tellingly, Plaintiffs do not cite any case to support their position that a failed business venture premised on one co-founder's broken promise to fund the company, work for the company, and provide a major client is the type of "extreme and outrageous" conduct that gives rise to tort liability.  However, because Plaintiffs do not even identify the basis of their cause of action, the Court GRANTS Defendants' motion to dismiss Plaintiffs' eighth cause of action for intentional infliction of emotional distress. *See, e.g.*, *Rashdan*, 2011 WL 197597, at *10.  In addition, because the basis of the claim is not clear, the Court cannot decide as a matter of law that Defendants' alleged tortious conduct is privileged, as Defendants contend.

Plaintiffs shall have leave to amend this claim.  Should they choose to amend this claim, in doing so Plaintiffs should keep in mind that they must allege facts to support a plausible finding that (1) the conduct exceeded all bounds of decency usually tolerated in a civil society; (2) that Defendants acted with intent to cause emotional distress, such as the existence of some motive for

1    doing so.  In addition, Plaintiffs must specifically allege how each Defendant's conduct and intent

2    gives rise to liability.  Notably, Plaintiffs must allege these additional facts in any amended

3    complaint, as they bear the burden of pleading enough facts to state a plausible claim at this stage

4    of the proceedings.  Plaintiffs instead urge the Court to give them the "opportunity through

5    discovery to obtain more evidence to prove the egregiousness of Joao's conduct."  (*Id.*)  Again,

6    Plaintiffs appear to misunderstand the pleading standards in federal court.  If Plaintiffs choose to

7    amend this claim, the onus is on them to include facts sufficient to state a claim.

8            4.      <u>Ninth Cause of Action: Negligent Infliction of Emotional Distress</u>

9            The final cause of action is for negligent infliction of emotional distress.  (Dkt. No. 19-1

10   ¶¶ 67-70.)[5]  Negligent infliction of emotional distress is not an independent tort.  *See Potter*, 6 Cal.

11   4th at 984.  Rather, "[n]egligent infliction of emotional distress is a form of the tort of negligence,

12   to which the elements of duty, breach of duty, causation and damages apply."  *Huggins v. Longs*

13   *Drug Stores Cal., Inc.*, 6 Cal. 4th 124, 129 (1993).  "The existence of a duty of care owed by a

14   defendant to a plaintiff is a prerequisite to establishing a claim for negligence."  *Nymark v. Heart*

15   *Fed. Savs. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991).  Thus, "absent a duty, the

16   defendant's care, or lack of care, is irrelevant."  *Software Design & Application, Ltd. v. Hoefer &*

17   *Arnett, Inc.*, 49 Cal. App. 4th 472, 481 (1996).  "The existence of a legal duty to use reasonable

18   care in a particular factual situation is a question of law for the court to decide."  *Vasquez v.*

19   *Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004).

20           Here, Plaintiffs' negligent infliction of emotional distress claim is premised on the

21   allegation that, "[a]s persons dependent on income from Muse to survive, it was foreseeable to

22   defendants that individual plaintiffs would suffer severe emotional distress by the acts and

23   omissions alleged hereinabove . . . [t]herefore, defendants had a duty to use due care not to engage

24   in acts or omissions that would cause Plaintiffs to suffer emotional distress."  (Dkt. No. 19-1 ¶ 68.)

25

26   _____

27   [5] A party can plead negligent infliction of emotional distress in the alternative to intentional
     infliction of emotional distress.  *See Bohnert v. Roman Catholic Archbishop of San Francisco*, 67
28   F. Supp. 3d 1091, 1099 (N.D. Cal. 2014) (citing Fed. R. Civ. P. 8(d)(3)).

United States District Court
Northern District of California

As a threshold matter, Plaintiffs' reference to all of the factual allegations in the FAC and failure to identify what and whose particular "acts and omissions" are alleged to give rise to this claim is fatal to their negligent infliction of emotional distress claim. *See Rashdan*, 2011 WL 197957, at *10.

But even looking at the FAC as a whole, if Plaintiffs had more specifically identified the basis of this claim, it would still fail. The first question is whether the FAC alleges facts sufficient to support that Defendants owed a duty to Plaintiffs. Certainly Patricia did not since there are no facts alleged regarding her involvement with Plaintiffs, as discussed above. Nor can the Court plausibly infer that Nakamura owed Plaintiffs an independent tort duty; indeed, Plaintiffs' opposition cites no case in support of their conclusory allegation that he does. Thus, the negligent infliction of emotional distress claim against Nakamura is dismissed (and, as set forth above, all claims against Patricia have been dismissed already).

However, the FAC alleges facts from which the Court can reasonably infer that Joao owed Plaintiffs a duty because he was engaged in a joint venture with Plaintiffs. "It has generally been recognized that in order to create a joint venture there must be an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control." *Holtz v. United Plumbing & Heating Co.*, 49 Cal. 2d 501, 506-07 (1957). "An essential element of a . . . joint venture is the right of joint participation in the management and control of the business. Absent such right, the mere fact that one party is to receive benefits in consideration of services rendered or for capital contribution does not, as a matter of law, make him a . . . joint venture." *Bank of Cal. v. Connolly*, 36 Cal. App. 3d 350, 364 (1973). Here, viewing the facts alleged in the FAC and drawing all inferences in Plaintiffs' favor, Plaintiffs have sufficiently alleged that they and Joao were engaged in a joint venture to establish and maintain Muse. The parties reached an oral agreement to start the company, and all four members of the agreement shared some work responsibility in exchange for a salary. (*See* Dkt. No. 19-1 ¶ 13.) This is enough, at this stage, to allege the existence of a duty based on a joint venture, although it may turn out not to be the case after discovery. However, partners in a joint venture owe each other

20

*fiduciary* duties, *see, e.g.*, *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386, 390 (2008), not a duty to exercise due care generally to prevent members of a joint venture from suffering emotional distress.

Plaintiffs also appear to argue that Joao owed them a duty of care based on the existence of a "special relationship" between the parties.  In *J'Aire Corp. v. Gregory*, 24 Cal.3d 799 (1979), the California Supreme Court recognized that a party may recover for negligence chiefly arising out of a contractual breach where a "special relationship" exists based on a number of criteria, including:

> (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm.

*Id.* at 804.  But the court specifically limited the case's holding to circumstances when "the injury is not part of the plaintiff's ordinary business risk."  *Id.* at 808.  Such is not the case here, where plainly the harms alleged are part and parcel of the risk associated with leaving one's job to start a new company.  Thus, no duty arises from a "special relationship" between the parties.

And in any event, just as above, the conduct alleged in the FAC is not so extreme and outrageous that it states a plausible claim for negligent infliction of emotional distress liability. "In California, although damages for emotional distress may be recovered in the absence of either physical injury or impact, the extent to which defendants may be liable for negligent infliction of emotional distress without physical injury has been limited due to public policy considerations." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (citations omitted). One district court surveyed California case law and described the following negligence cases where courts have allowed plaintiffs to pursue negligent infliction of emotional distress claims:

> a doctor misdiagnosing a plaintiff's wife with syphilis, a hired therapist sexually molesting a plaintiff's son, a school board failing to notify a plaintiff that her daughter was sexually molested by a fellow student, a crematorium mishandling the remains of plaintiffs' close relative, and a company's unlawful disposal of toxic waste which caused plaintiff to develop a fear of cancer after ingesting contaminated water[.]

*Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1186 (S.D. Cal. 2010) (citations

United States District Court
Northern District of California

United States District Court
Northern District of California

1    omitted).  Plainly the business-related conduct alleged here—*i.e.*, that Joao encouraged Plaintiffs

2    to leave their jobs to start Muse then failed to hold up his end of the bargain at the expense of the

3    company—does not present the type of extreme and outrageous circumstances that California

4    courts consider extreme and outrageous enough to be actionable under this tort.  Plaintiffs' claim

5    for negligent infliction of emotional distress is therefore dismissed.

6         Plaintiffs have already amended once.  In their opposition, they were unable to highlight

7    any additional facts that they might plead to establish the existence of a duty of care, an essential

8    element of this claim.  Accordingly, because amendment would be futile, the claim is dismissed

9    with prejudice.  *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

10                                      **CONCLUSION**

11        For the reasons discussed above, the Court GRANTS Patricia's and Nakamura's motions

12   to dismiss in their entirety, and GRANTS IN PART Joao's motion to dismiss.  Plaintiffs state a

13   claim for promissory estoppel against Joao.  The causes of action for fraud, negligent

14   misrepresentation, against Joao only, as well as the causes of action for intentional interference

15   with prospective business advantage and intentional infliction of emotional distress, alleged

16   against all Defendants, are dismissed with leave to amend.  The negligent infliction of emotional

17   distress cause of action is dismissed with prejudice.

18        Plaintiffs shall have leave to file a second amended complaint ("SAC") by **August 13,**

19   **2015**.  Failure to file an SAC will result in dismissal of the claims addressed herein with prejudice.

20        **IT IS SO ORDERED.**

21   Dated:  July 28, 2015

22

23

24   JACQUELINE SCOTT CORLEY
     United States Magistrate Judge

25

26

27

28

                                      22